UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MAJOR C. SEABURY,

                      Plaintiff,

                      **MEMORANDUM AND ORDER**
  -against-                        06-CV-1477 (NGG)

THE CITY OF NEW YORK,

                      Defendant.
--------------------------------------------------------X
GARAUFIS, United States District Judge:.

Plaintiff Major C. Seabury, appearing *pro se*, files the present action alleging a variety of claims against the City of New York. Plaintiff has paid the requisite filing fee to commence this action. As set forth below, the Complaint is dismissed in part and Plaintiff is directed to file an Amended Complaint within thirty (30) days from the date of this order.

## BACKGROUND

Plaintiff submits a 48-page Complaint along with voluminous exhibits, many of which appear to be unrelated to his claims in this action.[1] His multiple "Causes of Action" each cite

---

[1] Plaintiff's Exhibit A is about 1 inch thick, includes a multitude of documents, is not consecutively numbered, and contains no index. Parts of it are further divided into several non-consecutive sub-exhibits labeled Exhibits A-F, Exhibit O, Exhibit B, Exhibit A, Exhibit B, Exhibit C, Exhibit E, Exhibit F, Exhibit C, Exhibit D, Exhibit E, Exhibit F, in this order. Among its documents are copies of letters he submitted to the IRS, the TRS, the New York Post, and the District Attorney of Kings County; the complaint submitted and currently pending in the S.D.N.Y., docket # 06 Civ. 1497; documents from his prior case in the S.D.N.Y., docket # 04 Civ. 10078; letters received from the IRS, TRS; postal receipts; check stop payment affidavits; copies of checks received from TRS, some appearing with "VOID" written across them in dark ink; printouts of IRC statutes and regulations, including information about taxable retirement benefits and "Tax Topics- Topic 410 (pensions and annuities) and 401 (wages and salaries); copies of newspaper clippings; Amended 2003 and 2004 Tax Returns claiming a refund for all taxes paid in those years; copies of Forms W-2, SSA-1099, and 1099-R; and copies of retirement account statements and a withdrawal statement from Plaintiff's City of New York Deferred Compensation Plan. Tabbed Exhibits B-G follow, some with sub-exhibits, and include Notice of Intention to File Claim in New York Supreme Court, County of Kings; Amended 2003 Tax Return; Order from Supreme Court of the State of New York Index No. 35252/03 dismissing Plaintiff's motion; July 16, 2005 Final Notice of Intent to Levy from the IRS; Plaintiff's letter to the New York State Banking Commission alleging banking fraud and letters from the State of New York Banking Department and Office of Thrift Supervision in response; Plaintiff's Service Retirement Application, dated June 19, 2003; typed lists of payroll credits to Plaintiff's checking account; and copies of account statements for Plaintiff's Deferred Compensation 401K Plan 98998-03 and an electronic printout of the Contribution History for Plan 98998-03 showing biweekly payroll contributions for 2004 and January 14 and 31, 2005.

various alleged crimes; complain that the New York City Board of Education ("BOE") and the Teacher's Retirement System ("TRS") misapplied and incorrectly reported various transfers, withdrawals, loans, and payments of payroll and pension funds; and allege that these actions increased his federal tax liability, "depleted" his pension, and "contaminated" his taxes, his pension funds, and his banking accounts. As near as can be determined by the Court in a painstaking reading of his papers, it appears that Plaintiff's underlying concerns are the depletion of his pension funds and an ongoing dispute with the Internal Revenue Service ("IRS") regarding taxes claimed to be owed for prior tax years. Although the Complaint is difficult to parse, the Court believes that Plaintiff is alleging the following facts and raising the following claims against Defendant.

At some time prior to the initiation of the present action, Plaintiff was employed by the BOE (Plaintiff's Complaint ("Compl.") at 2), and participated in the TRS (Compl. at 4). According to Plaintiff, on January 31, 2002, Plaintiff removed $20,243.59 from his tax deferred annuity account at the TRS. He describes these funds as "prior service time monies." (Id.) Plaintiff alleges that Defendant failed to properly credit these funds to his Tier IV Pension Account, Number 728147. (Id. at 7.) Instead, Plaintiff alleges, these funds and "all of the plaintiff's moneys [were] reported as alleged income" (Id.) and caused all subsequent W-2 Forms and his federal and state tax returns to be fraudulent. (Id. at 8, 9, 13, 14, 19, 22, 23, 31, 44.)[2]

---

[2] Among the exhibits attached to the Complaint is a letter from Plaintiff to the TRS, dated January 29, 2002, in which he submits two checks totaling $20,243.59 to purchase "prior service time from his teaching position." (Plaintiff's Exhibit A, sub-Exhibit B, Jan. 29, 2002 letter to TRS, at 1.) By letter dated December 6, 2005, the Case Management Unit of the TRS indicated that it had never received the checks. (Plaintiff's Exhibit A, sub-Exhibit C, December 6 2005 letter from Tom Gunn.) Plaintiff does not indicate whether the funds were removed from his bank accounts. He also complained that the TRS failed "to credit my prior service time related to outside employment." (Jan. 29, 2002 letter to TRS, at 4.) The Court conjectures that Plaintiff hoped to get credit for additional years of service, so as to increase the amount of his eligible pension upon retirement.

Plaintiff asserts that on June 19, 2003, Plaintiff "served 'notice'" of his intent to retire, by sending "'sworn' retirement papers" effective June 26, 2003. (Id. at 4.) The application included a hand-written notation: "Should the undersigned be denied his total service time of approximat [cut off] 38 years, 4 months and 17 days, this application shall become null and [cut off]. The undersigned then demands to be returned to his position of school pyschol [cut off]." (Plaintiff's Exhibit F, sub-Exhibit A). A letter from the Office of the Principal at Hale A Woodruff Public School 224, addressed to Plaintiff, and dated June 23, 2005 requests Plaintiff to contact the payroll office immediately and indicates that paperwork is enclosed. (Plaintiff's Exhibit A, second sub-Exhibit E.) According to Plaintiff, Defendant "denied" Plaintiff's retirement by letter dated July 2, 2003. (Compl. at 4.) Plaintiff did not return to work on September 1, 2003. (Id. at 5.) Nonetheless, Plaintiff alleges that he was retained on the payroll as a school psychologist, and continued to receive electronic payments until June 28, 2005. (Id. at 5, 12.) He received an "Employee Pay Statement," dated June 28, 2005, showing earnings for that period of $5669.39; year-to-date earnings of $11,772.65; and deductions for federal and state withholding taxes, Social Security taxes, and Medicare taxes. (Id. at 24; Plaintiff's Exhibit A, sub-Exhibit O.) However, Plaintiff also asserts that he did not receive "any 'Employee Pay Statements' for the Jan. 1, 2005 through Jan. 31, 2005 time period." (Compl. at 24.)

Plaintiff suggests that the June 28, 2005 statement is evidence of Defendant's attempt to establish a fraudulent "final average salary." (Id. at 25.) Plaintiff argues that because Defendant fraudulently established his final average salary, he should be accorded a final average salary equal to the "maximum sum in the present contract," and that this amount should serve as the basis for his Tier IV Pension and for calculating compensatory and punitive damages in the

3

present lawsuit. (Id. at 25-26.)

Plaintiff further alleges that by keeping him on salary after he served notice of retirement, Defendants conspired to defraud him of his Tier IV Pension benefits. (Id. at 42.) Plaintiff asserts that any income he received from June 26, 2003 until June 28, 2005 should not have been considered "earned income," and thus should not be subject to federal tax liability. (Id. at 5, 23.) He demands that all funds he received from Defendant "should be defined and declared a 'tax free gift.'" (Id. at 24; see also id. at 7, 8, 13, 15, 20, 22, 24, 27, 28, 33, 47.)

Plaintiff asserts that he currently remains an employee of the BOE and a member of the TRS. (Id. at 24, 26.) Plaintiff alleges that he was not served with any termination papers by the BOE or by the TRS. (Id. at 20, 24, 29.) He argues that his continued employment and receipt of salary from September 1, 2003 to December 31, 2004 contradicts the "TRS's apparent assertion that the plaintiff was not a member of TRS and Tier IV during this period of time." (Id. at 19; see also id. at 5, 23, 24.)[3]

Plaintiff alleges that Defendant's alleged failure to compensate him as an employee or retiree is "earned income fraud and/or pension fraud and federal tax withholding fraud." (Id. at 28.) He further alleges that Defendant's denial of that status denies him rights and privileges in violation of the United Federation of Teachers' Contract, the New York State constitution, and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Id. at 26, 29.) In particular, he asserts that Defendant's failure to provide him with termination papers violates his constitutional rights. (Id. at 29.)

---

[3] Conversely, he argues that if he was not a member of the TRS from Jan. 31, 2002 until the present, then he must not have been an employee of the BOE from Sept. 1985 until Jan. 30, 2002. Accordingly, he also demands that all "combined income" after September 1985 is the result of fraud, and that he is entitled to "all back combined income from Sept. 1985 and all forward combined income through the age of 84 (the life expectancy of the plaintiff with commensurate increases in salary) plus treble punitive damages for malice, intent and forethought." (Compl. at 33.)

4

Plaintiff asserts that Defendant continues to make electronic transfers of pension funds to his checking account without his permission. (Id. at 32.) Plaintiff argues that "all deductions that were electronically transferred from the plaintiff's N.Y.C.B.O.E. to the City of New York Deferred Compensation 401K plan #98998-03 from Jan. 1, 2005 through Jan. 31, 2005 have as their basis and foundation earned income fraud and federal tax withholding fraud." (Id. at 28.) Accordingly, he argues, "[a]ny and all monies removed from this account were 'not' distributions for the Jan. 1, 2005 through Dec. 31, 2005 tax period" and should be declared a "tax free gift" and, in addition, the funds should be replaced by the Defendant as punitive and compensatory damages. (Id. at 28-29.) On the other hand, he states that payments into his Tier I account were not fraudulent. (Id. at 30.)

Plaintiff accuses Defendant of committing "tax fraud," "Banking Fraud," "Federal Deposit Insurance Fraud," and mail fraud by making electronic transfers of pension and payroll funds and by using the United States Postal Service to mail "false and fraudulent" documents including IRS reporting forms, checks alleged to be income, and a letter claiming that several checks had been lost or not received. (Id. at 1, 5, 7, 12-13, 17-18, 21, 31, 32, 33, 35-37, 40.)

Plaintiff also asserts that beginning in April 26, 2002, Defendant "begins another round of similar allegations of proven earned income fraud, tax withholding fraud, state tax withholding fraud, pension fraud, medicare fraud, social security fraud against Rahsaan A. Seabury."[4] (Id. at 9-10.) Plaintiff argues that this suggests a "pattern of federal and state tax fraud." ( Id. at 10.) He also asserts that "defendants [sic] actions against Rahsaan Seabury were

---

[4] In papers similarly styled to those submitted by Plaintiff Major C. Seabury, Rahsaan A. Seabury has filed a series of suits in this Court under Civil Docket Numbers 03 CV 4644, 04 CV 5569, 05 CV 4016, and 06 CV 807. Each case was dismissed by this Court. Rahsaan A. Seabury is not a party to the present action.

5

retribution for the plaintiff filing papers." (Id.)

Plaintiff further alleges that Defendant retaliated against Plaintiff by terminating his Tier I Pension, Number 164307 and his "N.Y.C.E.R.S. pension # 36407" on August 1, 2003, in response to Plaintiff filing a complaint in case number 107348/2003 in the New York Civil Court for the County of New York. (Id. at 6, 29.)

On September 30, 2003, Plaintiff filed a complaint in the New York Civil Court for Kings County, alleging improper termination of his pension. (Id. at 6.) Plaintiff filed a "sworn complaint of Banking Fraud with the New York State Department of Banking dated April 12, 2005." (Id. at 38-39; see also Plaintiff's Exhibit F.) The Office of Thrift Supervision responded and explained that it had no authority over the actions of the City of New York. (Plaintiff's Exhibit F.) Nonetheless, Plaintiff claims that the agency's failure to investigate or deny the allegations is proof of the validity of his allegations. (Compl. at 39.) On November 1, 2005, Plaintiff submitted "a sworn complaint" to the Office of the Brooklyn District Attorney alleging Fraud and Earned Income Fraud. (Id. at 5; Plaintiff's Exhibit A, second sub-Exhibit B.) He argues that the District Attorney's failure to respond within 30 days is proof "by adoptive admission" of Defendant's guilt. (Compl. at 5.)

Plaintiff also has a dispute with the Internal Revenue Service ("IRS"), although the IRS is not named as a defendant in this action. Plaintiff alleges that the IRS demanded that he "return an unsolicited $5,094.08 apparent refund" for tax year 2003 along with interest and penalty. (Id. at 15.) Plaintiff received a Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated July 16, 2005, regarding "overdue taxes" from the period ending on December 31, 2003. (Plaintiff's Exhibit E.) Plaintiff seems to argue that this document, because it was not signed by

the commissioner of the IRS and because it was not followed by a "Notice of Levy," is evidence of a conspiracy between the IRS and Defendant to extort money from Plaintiff or to defend against Plaintiff's claims regarding the improper accounting and taxation of his pension and payroll income. (Id. at 16.) It appears that on August 8, 2005, Plaintiff filed Amended Tax Returns for 2003 and 2004, claiming zero income and asserting that his W-2 Forms were in violation of various tax topics and 26 U.S.C. §7202. (Plaintiff's Exhibit A, third sub-Exhibit B & second sub-Exhibit C) Plaintiff alleges that he received two letters from the IRS, dated November 21, 2005, denying refunds for 2003 and 2004 "because a corrected 1099-R and W-2 and appropriate documentation from the payer was not provided." (Id. at 15; see also Plaintiff's Exhibit A, IRS letter dated Nov. 21, 2005.) Plaintiff asserts that he filed a complaint with the IRS on April 6, 2005, alleging "Electronic Wire Transfer Fraud and "Federal Tax Fraud" and that the IRS and Defendant failed to respond within 30 days. (Id. at 18, 21.)

Plaintiff has a related case pending in the United States District Court for the Southern District of New York ("S.D.N.Y."), Civil Docket Number 06 Civ. 1497.[5] In that action, Plaintiff claims that his prior S.D.N.Y. case, Civil Docket Number 04 Civ. 10078, was improperly dismissed for failure to prosecute. (Plaintiff's Exhibit A, Complaint in 06 Civ. 1497.) Plaintiff has also litigated some or all of these issues in the New York State Civil Courts, Kings County, Index Number 35252/2003, and County of New York, Index Number 107348/2003. (Id. at 6, 14, 19, 23, 26, 29.) He alleges that the prior state and federal cases are founded in fraud. (Id. at 29-

---

[5] It appears that Plaintiff's case in the S.D.N.Y. may also have raised some of the same issues that appear in the Complaint before this Court. Plaintiff is advised that in the interest of conserving judicial resources, this Court will not consider specific claims that are pending in another jurisdiction. To the extent that Plaintiff's simultaneous suits in two different district courts is an attempt at forum shopping, this Court reminds him that under the doctrine of issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979).

31, 42.) Plaintiff received an Order in Index Number 35252/03 dated June 16, 2004 with the hand-written notation "After oral argument Plaintiff's motion is denied in all respects." (Plaintiff's Exhibit D.) Plaintiff alleges that the New York State court failed to issue a judgment that was properly signed and affixed with the raised seal of the court. (Compl. at 29.) He argues that "because he had no judgment or order which had any standing, force or effect," he was denied the right to appeal to the appellate division in violation of his state and federal constitutional rights. (Id.; see also Id. at 11, 30-31.)

Plaintiff demands that all of the taxes withheld by Defendant be returned, in addition to compensatory and punitive damages. (Id. at 8, 46-47.) Further, he argues that all of his past expenses, assets and liabilities are tainted with the alleged fraud, and thus he demands that Defendant be assessed the value of all of his current assets as compensatory damages. He also requests "$250,000,000 in Compensatory Damages and treble punitive damages for fraud, malice, intent and forethought." (Id. at 45.) Plaintiff also requests compensatory and punitive damages for "libeling and slandering" Plaintiff and "multiple counts of defamation of Character." (Id. at 45-46.)

## DISCUSSION

In reviewing plaintiff's complaint, the Court is mindful that because plaintiff is proceeding *pro se*, his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (citation omitted). Furthermore, his pleadings must be read liberally and interpreted as raising the strongest arguments they suggest. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). "[T]he failure in a complaint to cite a statute, or to

cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 46 (2d Cir. 1997) (quoting Albert v. Carovano, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (*en banc*). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

However, "[i]t is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction. Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)). Accordingly, "before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (citations omitted).

Federal subject matter jurisdiction is available only when a "federal question" is presented, or when plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000. To invoke federal question jurisdiction, the plaintiff's claim(s) must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. "Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of

federal law." State of New York v. White, 528 F.2d 336, 338 (2d Cir. 1995).

**Internal Revenue Code Claims**

Plaintiff appears to argue that federal question jurisdiction is conferred by references to the Internal Revenue Code.[6] Plaintiff alleges "Federal Tax Withholding Fraud pursuant to IRS Title 26 U.S.C. §7202" (Id. at 6, 7, 12, 13, 17, 18, 21), and a "pattern of federal and state tax fraud" (Id. at 10). Section 7202 of the United States Tax Code provides for criminal penalties for failing to collect, account for, or pay over any taxes imposed by the Tax Code, but does not provide for a private right of action. See 26 U.S.C. §7202. Private citizens cannot enforce the provisions of the Tax Code. That is the duty of the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, who are charged with the responsibility of administering and enforcing the Tax Code, including allegations of suspected fraud. United

---

[6] Plaintiff asserts that "jurisdiction is specifically conferred upon this United States District Court by the United States Federal Tax Code, IRS Topic 401" (Compl. at 1), and makes repeated references to "Earned Income Fraud pursuant to IRS Topic 401" (Id. at 5, 6, 7, 12, 13, 17, 18, 21, 22) and other alleged provisions of the IRC. Plaintiff apparently refers to Internal Revenue Service pamphlets on individual tax topics, and indeed, buried within Plaintiff's Exhibit A are copies of printouts from the IRS website, including "Topic 401" on the definition of wages and salary included in gross income, including amounts withheld for pension funds; "Topic 410" regarding the taxation of retirement benefits; and "EP Examination Process Guide – Section 9" which describes documents plan participants should receive from plan administrators. Contrary to Plaintiff's assertion, pamphlets published by the IRS, including the tax topics found on the IRS website, are not enforceable sources of Federal tax law. See Zimmerman v. Commissioner, 71 T.C. 367, 371, 1978 WL 3419 (U.S.Tax Ct.) ("[T]he authoritative sources of Federal tax law are in the statutes, regulations, and judicial decisions and not in such informal publications." (citing Adler v. Commissioner, 330 F.2d 91, 93 (9th Cir. 1964) (holding that "any interpretation by taxpayers of the language used in government pamphlets [cannot] act as an estoppel against the government, nor change the meaning of taxing statutes.")).

Plaintiff may also be confusing the IRS Tax Topics pamphlets with provisions of the Internal Revenue Code under Title 26 of the United States code. Indeed, 26 U.S.C. §401 establishes requirements for private pension plans to qualify for tax-exempt or -deferred status, while subsection (c) does address the definition of "earned income," but only in the context of rules relating to self-employed individuals and owner-employees. Likewise, 26 U.S.C. §410(a)(1)(B)(ii) refers to plans maintained exclusively for employees of an educational institution, but this section covers only minimum age and service conditions, which do not appear to apply to Plaintiff. In any case, there is no private right of action for an alleged violation of 26 U.S.C §401. See Reklau v. Merchants Nat'l Corp., 808 F.2d 628, 631 (7th Cir. 1986); Wiesner v. Romo Paper Prods. Corp. Employee Ret. Plan, 514 F. Supp. 289, 291 n.2 (E.D.N.Y. 1981) (Section 401 "[does] not create a substantive right that a beneficiary, participant or fiduciary could enforce.")

10

States v. LaSalle Nat'l Bank, 437 U.S. 298, 308 (1978). Federal courts have consistently refused to imply a private cause of action under the tax laws, including actions of employees against employers who have violated the requirements of the Tax Code. See Deleu v. Scaife, 775 F. Supp. 712, 716-17 (S.D.N.Y. 1991); DiGiovanni v. City of Rochester, 680 F. Supp. 80, 82-82 (W.D.N.Y. 1988).

If Plaintiff wishes to bring a cause of action in federal court to recover any tax alleged to have been erroneously or illegally assessed or collected, the United States is the proper defendant in such an action. While 28 U.S.C. §1346(a)(1) provides the district courts with jurisdiction over civil actions against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, Congress and the Courts have developed "a series of procedural hurdles that taxpayers must surmount in order to maintain" such an action. United States v. Forma, 42 F.3d 759, 763 (2d Cir. 1994). These requirements include exhaustion of administrative remedies within the Internal Revenue Service and time limitations on filing suit. See 26 U.S.C. §7422(a); 26 U.S.C. §6511.

**Fraud Claims**

A consistent motif running throughout the Complaint and attached Exhibits is Plaintiff's repeated allegations of fraud. In addition to the aforementioned claims of "Federal Tax Fraud," Plaintiff accuses Defendant of "Banking Fraud," "Federal Deposit Insurance Fraud," and mail fraud. Plaintiff's fraud claims, whether appearing under state or federal law, are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Plaintiff fails to state facts

11

which would meet the particularity requirements for allegations of fraud under state or federal law.[7]

**State Court Claims**

To the extent plaintiff seeks to challenge the decisions of the New York State Courts, the Rooker-Feldman doctrine clearly precludes this Court from exercising jurisdiction in this matter. Under the Rooker-Feldman doctrine – named after two United States Supreme Court cases, Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) – the United States District Court has no authority to review final judgments of a state court in judicial proceedings, except for constitutional challenges and reviews pursuant to an application for a writ of habeas corpus. As the Supreme Court recently reiterated, the doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court

---

[7] Plaintiff's allegations of banking fraud raise no question of federal law which would invoke federal question jurisdiction. Mail Fraud is a crime, punishable under 18 U.S.C. §1341. The elements of mail fraud are: "(1) a scheme to defraud victims of (2) money or property, through the (3) use of the mails." United States v. Walker, 191 F.3d 326, 344 (2d Cir. 1999). A "scheme to defraud" includes the specific intent to harm or defraud the victims of the scheme by making a false statement or material misrepresentation, or concealing a material fact. See Neder v. United States, 527 U.S. 1, 25 (1999); United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987). Like most sections of the Criminal Code, 18 U.S.C. §1341 may only be prosecuted by the government, and provides no general private cause of action for damages in civil suits. A limited private right of action for violations of some sections of Title 18 may be available under the Racketeering and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1964(c), but Plaintiff neither states a RICO claim, nor alleges facts that would support such a claim. To state a civil RICO claim, a plaintiff must plead facts alleging that "he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (citing 18 U.S.C. §1962(c) (1994)) (internal quotation marks and additional citation omitted). To be cognizable under RICO, "allegations of fraudulent predicate acts are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004). Among other requirements to establish a "pattern of racketeering activity" alleging predicate acts of mail fraud, "it is necessary to allege that the injured party relied on the fraudulent misrepresentations of the defendant, and that the reliance was the cause of the injury." B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F. Supp. 162, 170 (S.D.N.Y. 1995) (citations omitted). "Under New York law, the elements of common law fraud are 'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'" Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999) (quoting Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir. 1987)).

proceedings commenced and inviting district court review and rejection of those judgments."
Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct. 1517, 1521-22 (2005).
District courts do not have jurisdiction over challenges to state court decisions arising out of judicial proceedings "even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486.

Therefore, to the extent plaintiff brings the instant complaint as a means to challenge the state court decisions, this Court lacks jurisdiction to consider Plaintiff's claims that the state court judgment was procured by "perjury, fraud and deceit" (Id. at 29), or to review the substantive basis for the New York court's decision or the format in which it was issued. See Thaler v. Casella, 960 F. Supp. 691, 697-98 (S.D.N.Y. 1997) (Rooker-Feldman "requires that an aggrieved state court litigant must pursue his claims directly in the state appellate courts and ultimately to the United States Supreme Court."). "As the Supreme Court noted in Rooker, even if the judgment was wrongly procured, it is, nevertheless, an effective and conclusive adjudication until modified or reversed in the appropriate State appellate or collateral proceeding." Smith v. Wayne Weinberger, P.C., 994 F. Supp. 418, 424 (E.D.N.Y. 1998.)

**Constitutional Claims – Leave to Amend**

Plaintiff also claims that Defendant violated his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments and alleges that Defendant retaliated against him for filing a lawsuit in state court. The Court interprets Plaintiff's Complaint as brought pursuant to 42 U.S.C. §1983. Section 1983 allows an individual to bring suit against persons who, under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. §1983.

Plaintiff names only the City of New York as a defendant, and does not name individual defendants. A municipality can be liable under §1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). Proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

The Court grants Plaintiff leave to file an Amended Complaint to name as defendants the individuals responsible for the alleged deprivation of his rights or to allege facts that would support a liability claim against the City of New York pursuant to Monell. In addition, Plaintiff must set forth the specific dates and details of any facts supporting his claims that the defendant(s) have retaliated against him or otherwise deprived him of his pension benefits in violation of his federal constitutional rights.

**CONCLUSION**

Plaintiff shall have thirty (30) days from the date of this order to file an Amended Complaint addressing his constitutional claims under 42 U.S.C. §1983. All other claims in this case are dismissed under the Rooker-Feldman doctrine or for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3). The amended complaint must be captioned "Amended Complaint," and bear the same docket number as this Order.

All further proceedings shall be stayed for thirty (30) days. The Court certifies pursuant

to 28 U.S.C. §1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

                                    ___/s/_____
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

Dated: Brooklyn, New York
       May 18, 2006

cc:    Major C. Seabury
        2 Victoria Circle
       East Patchogue, NY 11772
       PLAINTIFF, PRO SE

       Jay Douglas Dean, Esq.
       Office of the Corporation Counsel
       100 Church Street, Room 5-143
       New York, NY 10007
       Fax: 212-788-0367
       COUNSEL FOR DEFENDANT